**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0602n.06
Filed: August 21, 2006

Nos. 05-3386/05-3996

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **Pellumb David Grishaj,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **On Petition for Review of an Order of** |
| | ) | **The Board of Immigration Appeals** |
| **Alberto R. Gonzales,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |
| | ) | |

BEFORE:      **Merritt and Gibbons, Circuit Judges, and O'Meara, District Judge.**[*]

   **MERRITT, Circuit Judge.**  Petitioner Pellumb David Grishaj seeks review of a decision

by the Board of Immigration Appeals upholding an immigration judge's denial of his application

for asylum under section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a) and

withholding of removal pursuant to section 241(b)(3)(A) of the Immigration and Nationality Act,

8 U.S.C. §1231(b)(3)(A).[1]  He also appeals the denial of his motion to reopen his case based on new

evidence.  For the following reasons, the petition is denied.

_____

   [*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District
of Michigan, sitting by designation.

   [1]Grishaj also requested withholding of removal pursuant to the United Nations Convention
Against Torture, 8 C.F.R. § 1208.16, which was also denied by the Board of Immigration Appeals.
He has not pursued the denial of withholding under this section in his petition to this Court.

**I.**

Grishaj is an ethnic Albanian from Kosovo, part of the former Republic of Yugoslavia and now a province of the independent country of Serbia.[2]  Grishaj's petition for asylum arises from conflicts in Kosovo during the breakup of Yugoslavia.  Kosovo is an autonomous province in Serbia located in the south of the country with a population of around two million people, predominately ethnic Albanians, with smaller populations of Serbs and other ethnic groups.  The province is the subject of a long-running political and territorial dispute between the Serbian (and previously, the Yugoslav) government and Kosovo's Albanian population, most recently in the 1990s when confrontations between ethnic Albanians and Serbs drew world attention to the province.  Kosovo has been under Serbian sovereignty since 1912.

Grishaj claims he became involved in the Kosovo independence movement while he was attending university in the early 1990s.  He attended rallies but was not a member of any political organization.  Transcript of Removal Hearing, Nov. 14, 2003, at 65.  After graduating, he lived in the southern part of Kosovo and testified that he joined an organization called the "Movement of Kosovar People" that advocated for rights for Albanian Kosovars.  He testified that he spoke at meetings as well as solicited members by going door-to-door.  He was also in charge of getting the group's pamphlets printed and he sometimes distributed literature as well.  *Id.* at 68-69.

---

[2]After a referendum in the spring of 2006, Montenegro voted for independence from Serbia, which became effective in June 2006.  Serbia and Montenegro are now two independent, sovereign nations.

In 1994, he obtained employment as a teacher of Albanian language and literature. The Movement of Kosovar People group disbanded, allegedly due to the detention of some of its members by Serbian forces. Grishaj testified that he continued his involvement with Albanian nationals by attending rallies and demonstrations against the Serbian government. *Id.* at 71. Grishaj was dismissed from his job in 1997 and told it was due to financial hardship, but Grishaj believes it was based on ethnic discrimination. He then taught private Albanian language lessons despite a law passed in 1998 that banned the teaching of Albanian. Grishaj testified that it was very dangerous to teach Albanian in contravention of the law, testifying that Serbians would kill those violating the anti-Albanian law. *Id.* at 73. He left Kosovo in February 1999 because he believed his life was in "jeopardy" due to his affiliation with the Movement of Kosovar People and his teaching of Albanian. *Id.* at 74. He traveled to Montenegro, Slovenia and then to the United States, where he entered in May 1999 using a fraudulent passport. *Id.* at 80. At his removal hearing in November 2003, Grishaj testified that at the time of the hearing he believed he would still be in danger if he returned to Kosovo. *Id.* at 75-76.

Grishaj's sister testified at the removal hearing that shortly after he left home in February 1999, the family was forced to leave their home in Kosovo and go to Albania to seek refuge because masked, armed gunmen invaded their home and threatened that they would be dead if they were not gone by the next day, telling them to go back where they came from. *Id.* at 58.

At the conclusion of the hearing, the Immigration Judge issued an oral order denying Grishaj relief. *In re Grishaj*, A77823312-Detroit (U.S. Imm. Ct. Nov. 14, 2003) (transcription of oral order). The Immigration Judge noted several discrepancies between the testimony given at the hearing and

information included on the asylum application, but she did not rely on an adverse credibility finding to deny the application. Instead, she found that even assuming Grishaj demonstrated past persecution, the changed conditions in Kosovo rendered any past persecution moot. She also found that he did not show a well-founded fear of future persecution due to the increased stability in the country, including the presence of UN peacekeepers and the formation of a new government.

Grishaj appealed to the Board of Immigration Appeals, which affirmed and adopted the decision of the Immigration Judge, specifically noting that the changed conditions in Kosovo since 1999 made Grishaj's fear of future persecution unreasonable. *In re Grishaj*, A77823312 -Detroit (BIA Mar. 7, 2005). Grishaj appealed the denial of his asylum application to this Court and filed a motion to reopen his case with the Board of Immigration Appeals. The Board denied his motion to reopen because he failed to file any additional material evidence likely to change the result of the case. *In re Grishaj*, A77823312-Detroit (BIA July 28, 2005). Grishaj appealed the denial of his motion to reopen to this Court and that appeal was consolidated with the appeal of the denial of his asylum application.

## II.

A determination by an immigration judge and the Board of Immigration Appeals that an applicant has failed to satisfy his burden of establishing eligibility for asylum or withholding of removal must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001)(quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We may only reverse an immigration judge if we find

the evidence compels a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B); *Koliada*, 259 F.3d at 486.

## Application for Asylum

According to 8 U.S.C. § 1158(b)(1), the Attorney General is possessed with authority to grant asylum to an immigrant who is found to be a "refugee." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 427-28 (1987); *Koliada*, 259 F.3d at 486. A "refugee" is defined as including a person who is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ." 8 U.S.C. § 1101(a)(42)(A).

The determination of whether to grant or deny a request for asylum involves a two-step inquiry. First, an applicant bears the burden of demonstrating the existence of past persecution or a well-founded fear of future persecution. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). Second, the applicant must demonstrate that he "merits a favorable exercise of discretion by the Attorney General." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). The credible testimony of an asylum applicant may be sufficient to sustain the burden of proof without further corroboration. *Id.* at 451-52.

Grishaj does not make a claim of past persecution in Kosovo, outside of an uncorroborated claim that he believed he was dismissed from his job as a teacher of Albanian language and literature due to his ethnicity. Therefore, our focus will be on whether he has established a well-founded fear of future persecution. An applicant must (1) actually fear that he will be persecuted upon return to his native country, and (2) proffer evidence that establishes that his fear is objectively reasonable. *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994). Furthermore, he must be able to demonstrate

that the feared persecution would be on account of his race, religion, nationality, membership in a particular social group, or political opinion.  *Id.* at 621.

Grishaj maintains that he will be persecuted by the government upon his return to Serbia because of his Albanian ethnicity and the fact that he demonstrated against the Serbian government. He also claims that he will face persecution from fellow ethnic Albanians because he left Kosovo instead of staying to fight against the Serbians.  Both the Board of Immigration Appeals and the Immigration Judge concluded that Grishaj does not have a well-founded fear of persecution due to changed country conditions, specifically referencing the presence of United Nations peacekeepers in Kosovo and a lack of evidence that ethnic Albanians currently are subject to persecution in Kosovo.  Since the end of 1999, Kosovo has been governed by the United Nations Interim Administrative Mission in Kosovo (UNMIK) and the locally elected Provisional Institutions of Self-Government with little direct involvement from the Serbian government.  Security is maintained by the NATO-led Kosovo Force (KFOR) and Kosovo Police Service. Relying on the 2002 "Country Report" for Serbia-Montenegro, issued by the State Department, the Immigration Judge found that since the United Nations took control of the government, the country conditions have changed substantially and Albanians from Kosovo are not subject to a pattern or practice of mistreatment. *See* Country Reports on Human Rights Practices for 2002, released by the Bureau of Democracy, Human Rights, and Labor, United States Department of State.

We find this conclusion supported by substantial evidence.[3]  We acknowledge the long history of violence against ethnic Albanians in Yugoslavia.  However, the last several years have brought substantial change to the governmental structure of Serbia and Kosovo, including the possibility of future independence for Kosovo.  The changes in government, coupled with the presence of UN peacekeeping forces, are sufficient to support the decision of the Board of Immigration Appeals in this case.

## **Withholding of Removal**

Grishaj also requested withholding of removal.  The burden of proof for withholding of removal is higher than that of an asylum claim.  An applicant must demonstrate a "clear probability" that he will be subjected to persecution based on his "race, religion, nationality, membership in a particular social group, or political opinion" if forced to return to his native land.  8 U.S.C. § 1231(b)(3)(A); *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003).  To establish a "clear probability" of future persecution, the "applicant must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return."  *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)).  The "clear probability" standard is stricter than the "well-founded fear of persecution" standard utilized in asylum cases.  Therefore, an applicant who does

---

[3]Indeed, the most recent "Country Report" for Kosovo, issued in March 2006, continues to support that changed circumstances in that region render Grishaj's fear of future persecution unreasonable.  Moreover, international negotiations began in 2006 to determine the final status of Kosovo, particularly the issue of sovereignty; it is widely expected that the talks will lead to some form of independence for Kosovo.  While acknowledging that serious problems with human rights still exist in Kosovo, the Country Report stated that the government generally respected the human rights of all its citizens.  *See* Country Reports on Human Rights Practices for 2005, released by the Bureau of Democracy, Human Rights, and Labor, United States Department of State, March 8, 2006.

not meet the eligibility requirements for a grant of asylum necessarily fails to meet the more stringent standards required for withholding. *Koliada*, 259 F.3d at 489.

**Motion to Reopen**

We review denial of a motion to reopen an immigration proceeding under an abuse of discretion standard. An abuse of discretion occurs when the Board makes a decision "without a rational explanation, inexplicably depart[ing] from established policies, or rest[ing] on an impermissible basis . . . ." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982). The Board of Immigration Appeals found that Grishaj had not submitted evidence that would cause it to change its earlier decision and therefore declined reopen the proceeding. *In re Grishaj*, A77823312-Detroit (BIA July 28, 2005).

Grishaj's motion to reopen was largely based on the newly-released Home Office Report on Kosovo, which updated the status of the political and human rights conditions in Kosovo. The Report included an account of renewed ethnic violence in the town of Mitrovica in 2004. The Board found that the additional documents indicated some "political discord" in Kosovo, but they did not offer material evidence sufficient to change the original finding that Grishaj has no well-founded fear of future persecution. Because we find that the Board's decision to deny the motion to reopen has a rational explanation, we are unable to conclude that the Board abused its discretion

in denying the motion and we therefore affirm the denial of the motion to reopen the proceedings.[4]

For the foregoing reasons, we affirm the decision of the Board of Immigration Appeals.

.

---

[4]The Board erroneously stated in its denial of the motion to reopen that the Immigration Judge based her decision to deny Grishaj's asylum application primarily on adverse credibility findings. However, the Immigration Judge explicitly stated that she was resting her decision on changed circumstances in Kosovo, not on any adverse credibility findings. This error was harmless because the Board's original decision affirming the Immigration Judge did not make this error and the denial of the motion to reopen was not based on any adverse credibility findings.